IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRANDON ELLIOT CARTER,        *
AIS # 261259,                 *
                              *
        Petitioner,           *
                              *    CIVIL ACTION NO. 23-00034-KD-B
vs.                           *
                              *
PHYLLIS MORGAN,[1]            *
                              *
        Respondent.           *


REPORT AND RECOMMENDATION

This is a habeas case.  The petitioner, Brandon Elliot Carter ("Carter"), was convicted in Alabama state court of second-degree kidnapping, second-degree burglary, and third-degree criminal mischief following a violent domestic dispute with an ex-girlfriend.  Carter says his convictions are unconstitutional and has petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2254.

The District Judge assigned to Carter's case referred his petition to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72

---

[1] The Court takes judicial notice that Phyllis Morgan is the Warden of William E. Donaldson Correctional Facility, where Petitioner Carter is currently incarcerated.  See Rules Governing § 2254 Cases, R. 2(a) ("If the petitioner is currently in custody under a state-court judgment, the petitioner must name as respondent the state officer who has custody.").  Accordingly, the Clerk of Court is **DIRECTED** to substitute Phyllis Morgan as the Respondent in this case pursuant to Federal Rule of Civil Procedure 25(d).

of the Federal Rules of Civil Procedure, and General Local Rule 72(a)(2)(R). The undersigned has reviewed the parties' filings and exhibits and finds there is sufficient information before the Court to resolve the issues presented without an evidentiary hearing. For the reasons set forth below, the undersigned recommends that Carter's § 2254 claims be denied and that his petition be dismissed with prejudice.

## I.    **FACTUAL AND PROCEDURAL BACKGROUND**

In early 2015, Carter and his self-described "childhood on-again-off-again" girlfriend were involved in a violent domestic dispute. (Doc. 10-1 at 2). Carter was criminally charged, and a jury of the Circuit Court of Mobile County, Alabama convicted him of second-degree kidnapping (CC-2015-6482), second-degree burglary (CC-2015-6483), and third-degree criminal mischief (CC-2015-6484). (Doc. 22-1 at 33). Carter was ordered to serve two concurrent life sentences with the Alabama Department of Corrections. (Id. at 32, 34-35).

Carter appealed to the Alabama Court of Criminal Appeals ("ACCA"), and his convictions and sentences were affirmed. (Doc. 22-11). He did not seek rehearing before the ACCA, nor did he seek discretionary review from the Alabama Supreme Court ("ASC"). (Doc. 10 at 3). The ACCA issued its certificate of judgment on December 27, 2017. (Doc. 22-12).

More than a year and a half later, Carter petitioned the Circuit Court of Mobile County, Alabama ("Rule 32 Court") for postconviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. (Doc. 22-13 at 18-73). His petition and accompanying memorandum were lengthy, alleging among other things that Carter's trial counsel was ineffective, that his due process and equal protection rights had been violated, and that he was deprived of a fair trial and an impartial jury. (Id. at 22-73). Carter also asked the Rule 32 Court to excuse the untimeliness of his petition under the doctrine of equitable tolling. (Id. at 25-27).

After significant delays caused by Carter's efforts to obtain *in forma pauperis* status, including at least two mandamus proceedings in the Alabama appellate courts, the Rule 32 Court entered an order on June 8, 2020, requiring the State to answer Carter's petition by September 16, 2020. (See Doc. 22-13 at 81-191; Doc. 22-14 at 1-9; Doc. 22-15 at 1-27).

In response, Carter sought leave to amend his Rule 32 petition because he "realize[d] that he ha[d] not stated his claims with particularity to comply with Rule 32.6(b) Ala. R. Crim. P." (Doc. 22-15 at 28-30). The Rule 32 Court granted the motion, and Carter filed his first amended Rule 32 petition on September 14, 2020, alleging substantially the same grounds for relief as his initial

petition did. (Id. at 32-36, 58-102). The Rule 32 Court ordered the State to respond by January 6, 2021. (Id. at 57).

After several motions and orders relating to the deadlines for the State's response and Carter's time for replying thereto, the State responded to Carter's amended Rule 32 petition on March 5, 2021. (Id. at 105-07, 140-44, 147-70). Carter once again requested additional time to reply to the State's response (id. at 171-73), and the State objected to that request, arguing that Carter had had enough time to respond to the State's position and additional delays were unwarranted. (Id. at 175-78). On March 23, 2021, the Rule 32 Court ordered that Carter could file a brief "making legal arguments concerning facts and claims already pled," but "no new facts or claims" would be considered. (Id. at 179-83).

A few days later, Carter submitted a 56-pages long "Supplemental Amendment" to his amended Rule 32 petition, seeking not only to supplement the factual allegations for his existing claims but also to add a new ineffective-assistance claim that he said was omitted from his previous filing. (Doc. 22-15 at 188-200; Doc. 22-16 at 1-43). The Rule 32 Court rejected the amendment, ordering that it was taking Carter's case under submission "based on the claims asserted at the time of the State's March 5, 2021 response." (Doc. 22-15 at 185-87). The Rule 32 Court dismissed Carter's postconviction case on April 5, 2021.

(Doc. 22-16 at 48-55).[2]  Carter challenged that dismissal before the ACCA on direct appeal and on rehearing, and he sought discretionary review from the ASC, but his efforts failed.  (Docs. 22-18, 22-20, 22-21, 22-22, 22-23, 30-1, 30-2).

Unsuccessful in the Alabama state courts, Carter filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of Alabama that was docketed on December 13, 2022.  (Doc. 1).  The case was transferred to this district on January 26, 2023.  (Doc. 6).  This Court ordered Carter to refile his petition on its required form for § 2254 habeas petitions, and Carter complied.  (Docs. 8, 10).  Carter's operative habeas petition is the one docketed on February 28, 2023.  (Doc. 10).  The undersigned addresses Carter's claims below.

II.  **STANDARD OF REVIEW**

The Court's review of Carter's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, "the role of the federal courts is strictly limited."  Jones v. Walker, 496 F.3d 1216, 1226 (11th Cir. 2007).  Specifically, 28 U.S.C. § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a

---

[2] Carter also filed a second state postconviction action raising claims that are unrelated to the habeas proceeding before this Court.  The Circuit Court of Mobile County, Alabama summarily dismissed those claims on June 20, 2023.  (Doc. 22-29).

State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.

Put succinctly, a federal court may grant habeas relief *only if* the state court arrives at a conclusion contrary to that reached by the United States Supreme Court on a question of law or decides a case differently from the way the United States Supreme Court did on a set of materially indistinguishable facts, *or* if the state court's decision involves an unreasonable factual determination. Price v. Vincent, 538 U.S. 634, 638-43 (2003) (discussing application of § 2254). Habeas relief is not available just because a state court erred in adjudicating a federal constitutional claim; a habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011); see also Greene v. Fisher, 565 U.S. 34, 38 (2011) (noting that the AEDPA standard is purposely onerous because "federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction") (quotation omitted). With this standard of review in mind, the undersigned proceeds to examine Carter's claims.

**III. <u>ANALYSIS</u>**

Carter's habeas petition and supporting memorandum identify the following four habeas claims:[3]

> **<u>Ground One – Ineffective Assistance of Counsel (Burglary Jury Instructions)</u>**: Carter contends his trial counsel was constitutionally ineffective for not challenging the trial court's jury instructions on burglary. He says the jury should have been instructed that third-degree burglary, not second-degree burglary, was the proper lesser-included offense in his case. (Doc. 10 at 6-7; Doc. 10-1 at 11-13).

> **<u>Ground Two – Ineffective Assistance of Counsel (Kidnapping Jury Instructions)</u>**: Carter asserts his trial counsel was ineffective for not challenging the trial court's failure to instruct the jury that "deadly physical force" was a statutory element of second-degree kidnapping. (Doc. 10 at 7; Doc. 10-1 at 13-15).

---

[3] Carter also generally accuses that his other "rights" were violated too, including the right to be free from unreasonable searches and seizures, right to privacy, right against self-incrimination, right to an impartial jury, and right to a fair trial. (Doc. 10-1 at 11, 13, 15). The undersigned explains in Section III(D), *infra*, why these allegations do not warrant habeas relief.

**Ground Three – Due Process (Disallowance of Amended State Court Pleadings)**: Carter says his due process rights were violated when the Rule 32 Court refused to accept a second amended version of his Rule 32 petition. (Doc. 10 at 8; Doc. 10-1 at 15-17).

**Ground Four – Due Process/Equal Protection (Disallowance of State Court Reply Brief)**: Carter contends his due process and equal protection rights were violated by Rule 32 Court's decision to dismiss his Rule 32 petition before receiving his reply to the State's answer. (Doc. 10-1 at 17-18).

The undersigned recommends that these claims be dismissed. For starters, Carter's entire petition is untimely, and no statutory or equitable tolling principles apply to his claims. Additionally, Grounds One and Two fail on the merits, and Grounds Three and Four fail because they are state-law issues that are outside the scope of federal habeas review.

**A. Carter's Petition is Time-Barred.**

As a threshold matter, Carter's habeas claims fail because they are untimely. AEDPA imposes restrictions on when habeas petitions may be filed in federal court:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

8

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Carter does not suggest the triggering dates in subsections (C) or (D) apply to his claims, nor does the undersigned see any reason that they could apply.  However, Carter does allege facts that, construed liberally, might make either subsection (A) or (B) applicable to his claims.  The undersigned addresses both subsections, and for the reasons explained below, finds that subsection (A) controls in Carter's case.

Beginning with subsection (B), a habeas petitioner's statute of limitations could start to run on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed."  Id. at § 2244(d)(1)(B).  In other words, "if the petitioner was prevented from filing his habeas corpus petition as a result of 'illegal state action,' the limitation period will not begin until the state impediment is removed."  Arthur v. Allen, 452 F.3d 1234, 1249 (11th Cir.), opinion modified on reh'g, 459 F.3d 1310 (11th Cir. 2006).

Subsection (B) is inapplicable to Carter's claims. While Carter explains in great detail how the challenges of prison life hindered his efforts to file a state postconviction petition, he never suggests the State acted *illegally* to prevent him from filing that petition. Much less does he allege that any illegal State action prevented him from filing a federal habeas petition.

That leaves subsection (A), meaning that Carter's one-year limitation period commenced on "the date on which [his] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The ACCA affirmed Carter's conviction and sentence on direct appeal on December 8, 2017. (Doc. 22-11). Carter did not petition the ACCA for rehearing or seek discretionary review by the ASC. Accordingly, his conviction became final for purposes of § 2244(d)(1)(A) on December 27, 2017, when the ACCA issued a certificate of judgment. See Howard v. Stewart, 2019 U.S. Dist. LEXIS 188283, at *8, 2019 WL 6501727, at *4 (S.D. Ala. Oct. 29, 2019) ("Because [petitioner] did not seek a writ of certiorari in the Alabama Supreme Court, his conviction became final for federal habeas purposes . . . with the issuance of the certificate of judgment by the [ACCA]."), report and recommendation adopted, 2019 U.S. Dist. LEXIS 207581, 2019 WL 6499124 (S.D. Ala. Dec. 3, 2019); Crenshaw v. Ferrell, 2005 U.S. Dist. LEXIS 43178, at *7 & n.7, 2005 WL 2233102, at *2 & n.7 (S.D. Ala. Sept. 9, 2005), report and

recommendation adopted, 2006 U.S. Dist. LEXIS 56071, 2006 WL 2091771 (S.D. Ala. July 24, 2006).

Carter did not seek federal habeas relief until December 2022, almost five years after his judgment became final. This means his petition is untimely unless he can qualify for statutory tolling or equitable tolling. See Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008). In the undersigned's view, Carter is not entitled to tolling under either theory.

First, Carter is not entitled to statutory tolling. Pursuant to 28 U.S.C. § 2244(d)(2), AEDPA's one-year limitation period is tolled during the pendency of "a properly filed application for State post-conviction or other collateral review" of the underlying judgment. It is critical, however, that the state postconviction petition be "properly filed," and that is where Carter falls short. His conviction became final on December 27, 2017, so he needed to file his Rule 32 petition before December 27, 2018, in order to statutorily toll the AEDPA limitations period. Carter acknowledges he did not file his Rule 32 petition until May 2019, which is plainly after the AEDPA limitations period had already expired. (See Doc. 10-1 at 7). Thus, statutory tolling cannot save Carter's habeas petition. See McCloud v. Hooks, 560 F.3d 1223, 1227 (11th Cir. 2009) (noting that a Rule 32 petition cannot toll the AEDPA limitations period if the one-year period expired prior to filing the Rule 32 petition); Tinker v.

11

<u>Moore</u>, 255 F.3d 1331, 1333-35 n.4 (11th Cir. 2001) (cautioning that "a properly and timely filed petition in state court only tolls the time remaining within the federal limitation period").

Second, Carter does not qualify for equitable tolling. Equitable tolling is available only where a petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." <u>Holland v. Florida</u>, 560 U.S. 631, 649 (2010) (citation and internal quotation marks omitted). The Eleventh Circuit has explained:

> Because equitable tolling is "an extraordinary remedy," it "is limited to rare and exceptional circumstances" and "typically applied sparingly." <u>Lawrence v. Florida</u>, 421 F.3d 1221, 1226 (11th Cir. 2005), <u>aff'd</u>, 549 U.S. 327 (2007). Thus, we have concluded that equitable tolling is available only "'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" <u>Id.</u> (quoting <u>Sandvik v. United States</u>, 177 F.3d 1269, 1271 (11th Cir. 1999)). The petitioner bears the burden of showing that equitable tolling is warranted. <u>See Drew v. Dep't of Corr.</u>, 297 F.3d 1278, 1286 (11th Cir. 2002).

<u>Hunter v. Ferrell</u>, 587 F.3d 1304, 1308 (11th Cir. 2009). Carter alleges he could not timely file his *state* postconviction proceeding because his court-appointed lawyer told him the wrong limitations period, the Mobile Circuit Court Clerk did not respond to his requests for information about how to file a state Rule 32 proceeding, and the conditions of his confinement prevented him from accessing information about Alabama's postconviction

procedures.  (Doc. 10-1 at 4-7).  Carter asks this Court to accept that because he could not get information about Alabama's postconviction procedures, "he was effectively paralyzed under the AEDPA clock as well."  (Doc. 10-1 at 6).  Carter's logic is unpersuasive.  Carter does not explain why he could not file a federal habeas petition regardless of his challenges working through Alabama's state postconviction procedures.  Quite the opposite, the record shows that Carter was generally capable of doing the work necessary to file a federal habeas petition.  He is able to read and write, fill out forms, and has a clear working understanding of deadlines.  Yet Carter apparently never even investigated the procedures for filing a federal habeas petition, despite being in federal custody for several months (where Carter does not deny he had access to federal legal materials).  See Jordan v. Campbell, 2018 WL 3472699, at *2 (6th Cir. May 30, 2018) (noting that a federal habeas petitioner's failure to use his time in federal custody to collect legal materials suggested that the petitioner was not diligent in pursuing his rights).  Even more, Carter also acknowledges he had access to individuals in the free world to help him obtain information too.  (Doc. 10-1 at 5).

Carter's suggestion that he was unable to file his habeas petition because he was transferred among facilities and, at times, did not have access to his legal paperwork or full law libraries is equally unavailing.  See Jackson v. United States, 2012 U.S.

13

Dist. LEXIS 78568, at *9-10, 2012 WL 2047529, at *3-4 (N.D. Ala. Apr. 27, 2012) (collecting cases from the Eleventh Circuit for the proposition that "institutional transfers, periods of confinement under more restrictive conditions than general population, and lack of ready access to legal paperwork and law libraries are not 'extraordinary circumstances'; they are usual incidents of prison life"), report and recommendation adopted, 2012 U.S. Dist. LEXIS 78542, 2012 WL 2046822 (N.D. Ala. June 6, 2012). Put simply, even assuming Carter did have trouble filing his state postconviction proceeding, he has not demonstrated diligence or extraordinary circumstances that prevented him from timely filing a federal habeas petition. Equitable tolling does not save Carter's petition.

One final consideration on the issue of timeliness: A habeas petitioner's actual innocence, if proved, may serve as a gateway to consideration of constitutional claims otherwise time-barred under § 2244(d)(1)'s one-year limitation period. McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). To successfully assert actual innocence as a gateway to review of time-barred claims, a habeas petitioner is required "(1) to present new reliable evidence . . . that was not presented at trial, and (2) to show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000,

1011 (11th Cir. 2012) (per curiam) (internal quotation marks and citations omitted). Carter has made no showing of actual innocence that would support consideration of his untimely claims.

To conclude on this issue, Carter's federal habeas petition was filed years after his conviction became final, and it is plainly untimely. Carter is not entitled to statutory or equitable tolling, nor has he demonstrated his actual innocence to excuse the late nature of his petition. Carter's petition is due to be dismissed as time-barred under 28 U.S.C. § 2244(d)(1).

**B. Carter's Ineffective Assistance of Counsel Claims (Grounds One and Two) Fail on the Merits.**

Carter's petition advances two theories for why his trial counsel was constitutionally ineffective. For Ground One, Carter says his attorney did not amply oppose the trial judge instructing the jury that second-degree burglary could be a lesser-included offense of first-degree burglary. (Doc. 10 at 6-7; Doc. 10-1 at 11-13). For Ground Two, Carter argues his attorney should have objected to the jury instructions given for second-degree kidnapping, particularly the trial judge's failure to define "deadly physical force" for the jury. (Doc. 10 at 7; Doc. 10-1 at 13-15). Even if they were not time-barred, these claims would fail on the merits.

Recalling the legal standard that governs these claims, if an Alabama court adjudicated Carter's claims on the merits, this Court

cannot grant relief unless that court (1) "contradicted or unreasonably applied [Supreme Court] precedents," or (2) "handed down a decision 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" <u>Shoop v. Twyford</u>, 596 U.S. 811, 818-19 (2022). The question before this Court is not whether the Alabama court's determination was incorrect, but whether that determination was reasonable, "a substantially higher threshold" for Carter to meet. <u>Id.</u> at 819 (citations omitted).

Because the last state court to rule on Carter's claims — the ASC — summarily denied relief, this Court "looks through" that unexplained decision to the last related state court decision that does provide relevant rationale, which is the ruling from the ACCA. <u>See</u> <u>Pye v. Warden, Ga. Diagnostic Prison</u>, 50 F.4th 1025, 1034 (11th Cir. 2022) (en banc) (citing <u>Wilson v. Sellers</u>, 584 U.S. 122, 125 (2018)).

Regarding Carter's claim that his counsel should have opposed second-degree burglary as a lesser-included offense of first-degree burglary, the ACCA said:

> In claim (1)(c), Carter argues his trial counsel was ineffective for failing to object to the circuit court's instruction on second-degree burglary as a lesser-included offense of first-degree burglary. Although he agrees that a lesser-included charge was applicable, Carter argues it should have been third-degree burglary rather than second-degree burglary. Thus, Carter recites that language in § 13A-7-7(a)(1) Ala. Code 1975, as the basis for his belief that third-degree burglary

16

> was the appropriate lesser-included offense. (Carter's
> petition, R. 45-54.) But that section only deals with
> the unlawful entry of "a dwelling." Here, the undisputed
> evidence showed that the victim's residence was "a
> lawfully occupied dwelling house" and thus second-degree
> burglary under § 13A-7-6(b), Ala. Code 1975, was the
> proper lesser-included offense. Thus, the circuit court
> correctly held that Carter's claim (1)(c) lacked merit
> and due to be summarily dismissed under Rule 32.7(d).

(Doc. 22-20 at 10-11).

Regarding Carter's claim that his trial counsel was
ineffective for not challenging the trial court's jury
instructions about second-degree kidnapping, the ACCA ruled:

> In claim (1)(e), Carter argues his trial counsel was
> ineffective for failing to object to the circuit court's
> failure to define "deadly physical force" as an element
> of second-degree kidnapping. Although Carter correctly
> argues the circuit court did not charge the jury on the
> legal definition of "deadly physical force," Carter's
> trial counsel was not ineffective for failing to object
> to the lack of the charge.
>
> Under § 13A-6-44(b), the State had to prove that Carter
> abducted the victim with intent to use or threaten to
> use deadly physical force. "Deadly physical force" is
> defined as "physical force which, under the
> circumstances in which it is used, is readily capable of
> causing death or serious physical injury." § 13A-1-
> 2(6), Ala. Code 1975. In <u>Carter v. State</u> (No. CR-16-
> 0563), the State's evidence showed the victim testified
> that Carter shoved his way into the occupied dwelling,
> kicked in the bathroom door, and dragged her out of the
> house into his car. The victim also testified that
> Carter held a gun on her and threatened to shoot her.
> Given the facts involving the threat to shoot the victim
> with a gun, had the circuit court given the instruction,
> it does not appear it would have lessened the likelihood
> the jury would conclude that Carter engaged in the threat
> of deadly physical force. It is reasonable to conclude
> the jurors understood that a gun can cause death or
> serious physical injury. The jury did not ask the
> circuit court to define "deadly physical force" and

> there was no indication that the jury was confused about
> that definition.  Carter must plead facts showing that
> "the deficient performance prejudiced" him, which
> requires "errors, so serious as to deprive the defendant
> of a fair trial." Hyde v. State, 950 So. 2d 344, 354
> (Ala. Crim. App. 2006).  Thus, the circuit court
> correctly held that Carter's claim (1)(e) lacked merit
> and due to be summarily dismissed under Rule 32.7(d).

(Id. at 12-13).

These dismissals under Alabama Rule of Criminal Procedure 32.7(d) are adjudications on the merits subject to AEDPA review. See Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1260 (11th Cir. 2016).  Carter says the adjudications were an unreasonable application of clearly established Supreme Court law. (Doc. 10-1 at 12, 14).  The undersigned disagrees.

The "established federal law" applicable to Carter's ineffective-assistance claims comes from Strickland v. Washington, 466 U.S. 668 (1984).  See Lee v. Comm'r, Ala. Dep't of Corr., 726 F.3d 1172, 1192 (11th Cir. 2013).  Under Strickland, Carter must show both that: (1) his attorney's performance was deficient; and (2) the deficient performance prejudiced his defense.  466 U.S. at 687.  Because the Court must view Carter's ineffective-assistance claims, which are "already governed by the deferential Strickland test," through the lens of AEDPA, the standard of review applicable to those claims is "doubly deferential." Lee, 726 F.3d at 1192-93 (quotation omitted).

For the first Strickland prong — deficient performance — Carter must show that his attorney's representation "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In evaluating whether an attorney's performance was deficient, reviewing courts must apply a "strong presumption" that the performance was "within the wide range of reasonable professional assistance." Id. at 689. As for the second Strickland prong — prejudice — Carter "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In order to satisfy the prejudice prong, Carter must show that the likelihood of a different result is "substantial, not just conceivable." Lee, 726 F.3d at 1193 (quoting Harrington, 562 U.S. at 112). If a court finds that either the performance prong or the prejudice prong cannot be satisfied, it may forego analyzing the other prong. See Walker v. Jones, 10 F.3d 1569, 1573 (11th Cir. 1994) (declining to address prejudice where deficient performance was not proven); Boyd v. Allen, 592 F.3d 1274, 1293 (11th Cir. 2010) (declining to address deficient performance where prejudice was not proven).

In the undersigned's view, the ACCA did not unreasonably apply Strickland when it affirmed the dismissal of Carter's ineffective-assistance claims. As a threshold matter, although the ACCA did

not specifically cite to Strickland, the court did discuss Alabama case law that itself applied the Strickland standard. (See Doc. 22-20 at 10 (quoting Hooks v. State, 21 So. 3d 772 (Ala. Crim. App. 2008) (applying Strickland))). Even Carter acknowledges the Alabama courts correctly identified Strickland as the controlling legal standard. (Doc. 10-1 at 12).

The ACCA's application of Strickland was not unreasonable either. For Carter's claim that his attorney was ineffective for conceding to second-degree burglary as a lesser-included offense of first-degree burglary, the ACCA ruled that Carter could not prove deficient performance because second-degree burglary *was* the appropriate lesser included offense, not third-degree burglary like Carter contends. (Doc. 22-20 at 11). In other words, Carter's counsel was not ineffective for failing to take a futile position. See Pinkney v. Sec'y, Dep't of Corr., 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief.").

As for Carter's claim that his attorney should have demanded the trial court instruct the jury on "deadly physical force" as a statutory element of second-degree kidnapping, the ACCA concluded that Carter could not prove prejudice because (1) the evidence at trial showed Carter had shoved his way into the occupied dwelling, kicked in the door to the bathroom where the victim was hiding,

and dragged her out of the house into his car; (2) the evidence also showed that Carter held a gun on the victim and threated to shoot her; and (3) the jury did not ask the trial court to define "deadly physical force," which indicated they were not confused about the meaning of that term. (Doc. 22-20 at 12-13). Given these things, the ACCA concluded that an instruction on "deadly physical force" would not have lessened the likelihood the jury would find that Carter engaged in the threat of deadly physical force. (Id. at 13). Said differently, even assuming Carter's trial counsel was ineffective for not objecting to the trial court's instructions, Carter could not prevail on an ineffective assistance claim because he was not prejudiced from the missed objection.

Carter challenges these conclusions, but Carter has not met the doubly high standard of Strickland and AEDPA to warrant habeas relief. "The Strickland standard is a general one, so the range of reasonable applications is substantial." Premo v. Moore, 562 U.S. 115, 122-23 (2011) (quoting Harrington, 562 U.S. at 105). When § 2254(d) applies, as it does here, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 123. "Federal courts may grant habeas relief only when a state court blundered in a manner so well understood and comprehended in existing law and was

21

so lacking in justification that there is no possibility fairminded jurists could disagree." Tharpe v. Warden, 834 F.3d 1323, 1338 (11th Cir. 2016) (quotations omitted). After careful review, the undersigned cannot say the Alabama courts' rejection of Carter's ineffective-assistance claims was an unreasonable application of Strickland. The ACCA not only reviewed the issues presented under the correct legal standard (Strickland), but also determined that Carter could not prove deficient performance and/or prejudice. This further supports dismissing Grounds One and Two of Carter's petition.

### C. Carter's Due Process and Equal Protection Claims (Grounds Three and Four) are State Law Claims that Fall Outside the Scope of Habeas Review.

Carter's third and fourth grounds for relief take issue with how the Alabama courts handled certain procedural aspects of his state postconviction proceedings. More specifically, Ground Three alleges the Rule 32 Court should have accepted Carter's 56-page supplemental amendment which included a new ineffective assistance of counsel claim not raised in his earlier Rule 32 filings. (Doc. 10-1 at 15-17). Ground Four alleges the Rule 32 Court erred by ruling on the substance of Carter's Rule 32 petition before Carter filed a reply to the State's answer and affirmative defenses. (Id. at 17-18). These claims are unrelated to the cause of Carter's detention and are not cognizable in this habeas proceeding. See Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile

habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (holding that alleged errors during state postconviction proceedings did not state a claim for habeas relief). The undersigned recommends that Grounds Three and Four be dismissed on this basis too.

### D. **Carter's Other Alleged Constitutional Violations are Inadequately Pled and Fail on the Merits.**

While Carter's habeas filings enumerate only the four grounds for relief discussed above, Carter embedded in his accompanying memorandum broad stroke allegations that he suffered other constitutional violations too. (Compare Doc. 10 at 6-8, with Doc. 10-1 at 11, 13, 15-17 (alleging violations of the rights to a proper indictment, to be free from unreasonable search and seizure, to privacy, to avoid self-incrimination, to a fair trial, to an impartial jury, and so on)). If Carter intended these sweeping accusations to constitute claims for habeas relief, they are untimely for the reasons set forth in Section III(A), *supra*, and they are inadequately pled. Carter must do more than heave a load of alleged wrongs on the Court — without any clear ties to his factual allegations, any citations to legal authority, or any legal argument — and expect the Court to untangle whether he has any viable claims for federal relief. See Rule 2(c) of the Rules

Governing § 2254 Cases (requiring a state prisoner to "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground"); <u>Borden v. Allen</u>, 646 F.3d 785, 810 (11th Cir. 2011) (holding that § 2254 requires "fact pleading" and not merely "notice pleading"); <u>Reynolds v. Dunn</u>, 2022 U.S. Dist. LEXIS 54163, at *88, 2022 WL 895947, at *29 (N.D. Ala. Mar. 25, 2022) (noting that a petition should cite to "controlling constitutional, statutory, or other bases for relief") (quoting 1 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 11.6, at 654 (5th ed. 2005)).[4]

However, because Carter's *pro se* status affords him liberal construction of his pleadings, the undersigned addresses the following issues in Carter's memorandum that could be construed as independent claims for relief:

(1)  Whether the trial court constructively amended Carter's indictment for first-degree burglary by instructing the jury that second-degree burglary was a lesser-included offense of first-degree burglary? (<u>See</u> Doc. 10-1 at 1-2, 11-13).

(2)  Whether the trial court's failure to instruct the jury on the statutory definition of "deadly physical force" as an element of second-degree kidnapping violated Carter's constitutional right to due process? (<u>See</u> Doc. 10-1 at 1-2, 13-14).

(3)  Whether Carter suffered a constitutional violation when law enforcement retrieved text messages from

---

[4] If Carter's habeas filings can be construed to raise any claims for habeas relief not specifically addressed in this report and recommendation, the undersigned recommends those claims be dismissed for these same reasons.

his cell phone while he was in custody, and
relatedly, whether his trial counsel was
ineffective for failing to file a motion to
suppress those text messages on the grounds that
they were illegally obtained? (<u>See</u> Doc. 10-1 at 15-
16).

Like Carter's others, these claims do not justify federal
habeas relief. Each issue is addressed below.

**(i) Carter's "constructive amendment" allegations do not
warrant habeas relief.**

Similar to his allegations before this Court, Carter argued
to the Rule 32 Court that the trial court's jury instructions on
second-degree burglary constituted a "constructive amendment" to
his indictment. (Doc. 22-15 at 88). The Rule 32 Court dismissed
the issue pursuant to Rules 32.6(b) and 32.7(d) of the Alabama
Rules of Criminal Procedure. (Doc. 10-3 at 2 ("To the extent
Carter seeks to assert a ground for relief that does not fall
within [four enumerated grounds *not* involving constructive
amendments], the Court finds that any such grounds lack the
required specificity under Rule 32.6(b) and are summarily
dismissed pursuant to Rule 32.7(d).")).

Because the Alabama court's application of Rules 32.6(b) and
32.7(d), and its resulting conclusion that Carter failed to plead
a claim for constructive amendment, was an adjudication on the
merits, this Court's task is to decide whether that determination
was "contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court

of the United States." See Borden, 646 F.3d at 816; 28 U.S.C. § 2254(d)(1). To do this, the Court looks only to the allegations in Carter's operative Rule 32 petition and whether those allegations sufficiently state a claim for improper amendment of his indictment. See Powell v. Allen, 602 F.3d 1263, 1273 (11th Cir. 2010).

Starting with the "established Federal law" applicable to this issue, the Fifth Amendment provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. Const. amend. V. This guarantees that a defendant cannot be tried "on charges that are not made in the indictment against him." Stirone v. United States, 361 U.S. 212, 217 (1960) (citing Ex parte Bain, 121 U.S. 1 (1887)).

Jury instructions could impermissibly amend an indictment if they charge the jury on crimes not included in the indictment. United States v. Weissman, 899 F.2d 1111, 1113 (11th Cir. 1990). More specifically, "[a] constructive amendment to an indictment 'occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment.'" Diaz-Boyzo v. United States, 294 F. App'x 558, 560 (11th Cir. 2008) (per curiam) (quoting United States v. Keller, 916 F.2d 628, 634 (11th Cir. 1990)).

26

That is what Carter says happened in his case. Carter's burglary indictment read as follows:

> The GRAND JURY of [Mobile] County charge, that, before the finding of this indictment – Brandon Elliott Carter – whose name is to the Grand Jury otherwise unknown than as stated, did, on or about **March 10 2015**, knowingly and unlawfully enter or remain unlawfully in the dwelling of [**LW**] with intent to commit a crime therein, to-wit: **kidnapping and/or assault**, and while effecting entry or while in the dwelling or in immediate flight therefrom, the said **Brandon Carter** or another participant was armed with a deadly weapon, to-wit: **gun**, in violation of §13A-7-5 of the Code of Alabama, against the peace and dignity of the State of Alabama.

(Doc. 22-1 at 38 (emphasis in original)). In Carter's view, this indictment as written cannot encompass second-degree burglary because it alleges only that he entered a "dwelling" and not a "lawfully occupied dwelling-house" as set forth in Ala. Code § 13A-7-6(b).[5] (Doc. 10-1 at 11).

The undersigned does not find Carter's logic persuasive. Constructive amendments occur when an indictment's charges are broadened at trial, not narrowed. See United States v. Cotchery, 406 F. Supp. 3d 1215, 1221 (N.D. Ala. 2019) (citing United States v. Miller, 471 U.S. 130 (1985)). Here, Carter was charged with first-degree burglary pursuant to Ala. Code § 13A-7-5, which requires proof that Carter entered a "dwelling," and he was

_____

[5] Ala. Code § 13A-7-6(b) provides that a person commits the crime of second-degree burglary "if he or she unlawfully enters a lawfully occupied dwelling-house with the intent to commit a theft or felony therein."

convicted of second-degree burglary pursuant to Ala. Code § 13A-7-6(b), which requires proof that he entered a "lawfully occupied dwelling-house." The term "lawfully occupied dwelling-house" is a narrower term than "dwelling," not a broader one. The undersigned agrees with the Alabama courts that second-degree burglary was an appropriate lesser-included offense in Carter's case, and that his indictment was therefore not constructively amended. (See Doc. 10-3 at 4-5; Doc. 22-20 at 11). Carter is not entitled to habeas relief on this claim.

### (ii) Carter's complaints about the jury instructions for second-degree kidnapping do not warrant habeas relief.

Carter also argued during his Rule 32 proceedings, as he does here, that the trial judge erred by not instructing the jury on "deadly physical force" as an element of second-degree burglary. (Doc. 22-15 at 100-01). The Rule 32 Court summarily dismissed the claim pursuant to Alabama Rules of Criminal Procedure 32.6(b) and 32.7(d), a ruling the Alabama courts did not disturb on appeal. (See Doc. 10-3 at 2 (outlining the claims identified in Carter's postconviction petition and ruling that any other claims "lack the required specificity under Rule 32.6(b) and are summarily dismissed pursuant to Rule 32.7(d)")). Because these dismissals pursuant to Rules 32.6(b) and 32.7(d) of the Alabama Rules of Criminal Procedure are adjudications on the merits, this Court must only examine whether the allegations in Carter's operative

Rule 32 petition about the trial judge's jury instructions state a due process claim. See Borden, 646 F.3d at 816; Powell, 602 F.3d at 1273.

In looking at whether Carter has stated a due process claim based on the trial court's jury instructions, this Court is mindful that a jury instruction that is incorrect under state law is not automatically a basis for habeas relief. See Sanchez v. Sec'y, Fla. Dep't of Corr., 819 F. App'x 675, 677 (11th Cir. 2020) (per curiam) (citing Estelle v. McGuire, 502 U.S. 62, 71-72 (1991)). The question before this Court is whether those instructions "so infected the entire trial that the resulting conviction violates due process." Jamerson v. Sec'y, Dep't of Corr., 410 F.3d 682, 690 (11th Cir. 2005) (quoting Estelle, 502 U.S. at 72).

Carter was indicted for second-degree kidnapping pursuant to Ala. Code § 13A-6-44. (Doc. 22-1 at 36). That statute provides that a person "commits the crime of kidnapping in the second degree if he abducts another person." Ala. Code § 13A-6-44(a). As relevant here, the term "abduct" is defined as restraining a person "with intent to prevent his liberation by . . . using or threatening to use deadly physical force." Ala. Code § 13A-6-40(2).

At the close of evidence, the trial court instructed the jury as follows:

> THE COURT: If you find the State has failed to prove one or more of the elements of the charge of Kidnapping in the First Degree, then you cannot find the Defendant guilty of that offense and you would move to Count II of that indictment, which is Kidnapping in the Second Degree. And that simply is a person commits the crime of Kidnapping in the Second Degree if he abducts another person. That's the element to that charge.

(Doc. 22-4 at 129-30). The trial court also defined the term "abduct" as meaning "to restrain a person with intent to prevent her liberation by . . . using or threatening to use deadly physical force." (Id. at 128-29).

Carter contends the trial court should have gone a step further and instructed the jury on the statutory definition of "deadly physical force" too.[6] This allegation does not support granting Carter the habeas relief he seeks. First, this Court may not grant Carter habeas relief simply because the trial court's instructions were incomplete under state law. Estelle, 502 U.S. at 71-72. Second, Carter has not shown that the Alabama courts' rejection of his claim was contrary to, or an unreasonable application of, established federal law. Even if the jury

---

[6] Carter's insistence that the trial court told the jury "deadly physical force" was inapplicable cannot be squared with the transcript. The trial judge *did* say "the first one doesn't apply, and we all agree to that," but any reasonable interpretation of the transcript shows the trial judge was not referring to "deadly physical force" being inapplicable. Rather, he was referring to the first subsection of the statute defining the term "abduct", which defines abduction to include restraining a person by secreting or holding him in a place where he is not likely to be found, being inapplicable in this case. See Ala. Code § 13A-6-40(2)(a).

instructions should have been more detailed, the trial court's omission of the definition of "deadly physical force" did not "infect[] the entire trial" in a way that violated Carter's due process. See id. As the ACCA noted, the evidence at trial showed that Carter shoved his way into the house where his victim was hiding, kicked in the door of a room where she was positioned, dragged her out of the house, held a gun on her, and threatened to shoot her. (Doc. 22-20 at 12-13). This was sufficient evidence for the jury to conclude that Carter had used "deadly physical force" regardless of whether that term was independently defined. Carter has not stated a viable habeas claim based the kidnapping jury instructions.

> **(iii) Carter is not entitled to habeas relief based on the State's use of text messages obtained from his cell phone.**

The final issue — whether Carter suffered constitutional violations arising from the State's use of his text messages at trial — is different from the previous two. While the Rule 32 Court summarily dismissed the prior two issues for failure to state a claim, it altogether rejected this issue as an improper supplemental filing. (Doc. 22-15 at 185-87). Under the doctrine of procedural default, because the Alabama courts declined to hear this issue based on Carter's failure to abide by a state procedural rule, this Court likewise declines to review this issue on the

merits.  See Martinez v. Ryan, 566 U.S. 1, 9 (2012).[7]  Moreover, any Fourth Amendment claim would be foreclosed by Stone v. Powell, 428 U.S. 465, 494 (1976), as the Alabama courts provided Carter with a full and fair opportunity to litigate his Fourth Amendment claim.  (See Doc. 22-5 at 26-31).

## IV.    CERTIFICATE OF APPEALABILITY

If the District Judge adopts this report and recommendation and dismisses Carter's habeas petition, the District Judge must also issue or deny Carter a certificate of appealability ("COA") as required by Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  See also 28 U.S.C. § 2253(c)(1)(A) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court.").

When a habeas petition is dismissed on procedural grounds, without reaching the merits of any underlying constitutional

---

[7] The undersigned acknowledges there are exceptions to the procedural default doctrine where the petitioner can show cause-and-prejudice or actual innocence.  See McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (acknowledging these two exceptions to procedural default).  However, based on the record before the Court, neither of those exceptions apply in Carter's case, and an extended analysis of these exceptions would be superfluous in light of the multiple other grounds for dismissing Carter's claims.

claim, a certificate of appealability "should issue [only] when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a habeas petition is denied on the merits, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id.

After reviewing the issues presented in light of the applicable standards, the undersigned submits that reasonable jurists would agree that Carter's petition should be dismissed and that he should not be allowed to proceed further. As a result, the undersigned recommends that Carter be denied a certificate of appealability.[8]

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rules Governing § 2254 Cases, R. 11(a). If there is an objection to this recommendation by

---

[8] If the Court adopts the undersigned's recommendation against issuing a certificate of appealability, Carter "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rules Governing § 2254 Cases, R. 11(a).

either party, that party may present its argument to the District Judge in the objections permitted to this report and recommendation. See Brightwell v. Patterson, Case No. 1:11-00165-WS-C, ECF No. 14 (S.D. Ala. Oct. 11, 2011) (Eleventh Circuit order denying petitioner's motions for a certificate of appealability and to appeal IFP in a case in which this Court set out the foregoing procedure); see also Castrejon v. United States, 2011 U.S. Dist. LEXIS 83779, at *75, 2011 WL 3241817, at *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), report and recommendation adopted, 2011 U.S. Dist. LEXIS 84194, 2011 WL 3241580 (S.D. Ala. July 29, 2011); Griffin v. DeRosa, 2010 U.S. Dist. LEXIS 106920, at *12, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), report and recommendation adopted sub nom. Griffin v. Butterworth, 2010 U.S. Dist. LEXIS 106921, 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

## V.   APPEAL *IN FORMA PAUPERIS*

Should Carter decide to appeal this Court's disposition of his habeas petition, and should he desire to do so *in forma pauperis* ("IFP"), this Court would have to decide whether his appeal is taken "in good faith" as required by 28 U.S.C. § 1915(a)(3). See Fed. R. App. P. 24(a)(1) (requiring a party seeking leave to appeal IFP to file a motion in the district court). In order to find that Carter's appeal satisfies this statutory "good faith" requirement, this Court would have to find

that "a reasonable person could suppose that the appeal has some merit." Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000). Stated differently, Carter would have to show that appellate review of his claims is not frivolous when examined under an objective standard. Coppedge v. United States, 369 U.S. 438, 445 (1962). An action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001).

Considering this legal standard, and for the substantive reasons outlined in this report and recommendation, the undersigned finds that any appeal from Carter would lack arguable merit in law or fact. Accordingly, the undersigned recommends that the Court certify that any appeal by Carter in this action would not be taken in good faith, thus denying him entitlement to appeal *in forma pauperis*.[9]

## VI.  CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that Carter's § 2254 habeas petition (Doc. 10) be **DENIED,** and that this action **DISMISSED with prejudice.**  It is further recommended that any requests for a certificate of appealability or for permission to appeal *in forma pauperis* be **DENIED.**

---

[9] Carter may still file a motion to proceed *in forma pauperis* on appeal with the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).

The Clerk is **DIRECTED** to serve copies of Carter's operative habeas petition (Doc. 10) and this report and recommendation on Respondent Warden Phyllis Morgan, William E. Donaldson Correctional Facility, 100 Warrior Lane, Bessemer, AL 35023-7299.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the

Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **18th** day of **October, 2024.**

**/S/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**